E-FILED
Friday, 23 September, 2005  04:41:47 PM
Clerk, U.S. District Court, ILCD

```
              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF ILLINOIS
```

SUSAN M. GARDNER,                )
                                 )
        Plaintiff,                )
                                 )
    v.                           )      Case No. 04-1136
                                 )
JO ANNE B. BARNHART,             )
Commissioner                     )
of Social Security,              )
                                 )
        Defendant.                )

## ORDER

This matter is now before the Court on Plaintiff's Motion for Summary Judgment [Doc. # 15] and Defendant's Motion to Affirm [Doc. # 19].  For the reasons set forth below, Plaintiff's Motion for Summary Judgment [Doc. # 15] is DENIED and Defendant's Motion to Affirm [Doc. # 19] is GRANTED.

## BACKGROUND

Gardner filed her initial application for Disability Insurance Benefits (DIB) on December 21, 1998, alleging a disability onset date of August 14, 1998.  (R. at 114-16.)  Her application was denied at the initial and reconsideration levels and by Administrative Law Judge (ALJ) Barbara J. Welsch on July 19, 2000. (R. at 29-32, 33-53.)  On September 14, 2000, Gardner requested review of the ALJ's decision.  (R. at 90.)  On February 7, 2001, Gardner filed a second application for DIB and a determination was issued finding her under a disability beginning July 20, 2000. (R. at 98.)  On October 19, 2001, the Appeals Council granted Gardner's request for review of her initial application, and vacated the

ALJ's July 19, 2000 decision, remanding the case for further administrative proceedings to determine Gardner's disability status for the period of August 14, 1998 through July 19, 2000.  In doing so, the Appeals Counsel noted that "[f]urther consideration should be given to the opinion of Dr. Florell [Gardner's treating psychologist] in assessing claimant's mental impairment, as well as additional medical evidence contained in the subsequent claim file."  Specifically, the Appeals Counsel instructed the ALJ to "[o]btain evidence from a medical expert (psychiatrist) to clarify the nature and severity of the claimant's impairments"; evaluate Gardner's mental impairments in accordance with the regulations; give further consideration to Gardner's maximum residual functional capacity in accordance with the regulations; and obtain supplemental evidence from a vocational expert.  (R. at 98-100.)

The ALJ conducted another hearing on May 30, 2002 and issued her decision on September 24, 2002.  As relevant, the ALJ found:

> The strongest statement in support of disability comes from Dr. Florell, who supervised the claimant's care at BroMenn Counseling Services.  In May 2000, Dr. Florell wrote a letter indicating that claimant could not work because of her "emotional condition."  He said the claimant had trouble with concentration and attention and would have difficulty interacting with supervisors or the public. (Exh. 19F). Based on this statement, the Appeals Council indicated the need for a psychiatric medical expert.
>
> However, the undersigned finds that input from a medical expert is not warranted, because there is substantial evidence indicating that the claimant, had a mental impairment during the period at issue, but her mental impairment did not prevent the performance of work.  Two

2

> consultive examinations and two State Agency
> determinations are inconsistent with the conclusions of
> treating physician Dr. Florell.  All four of these
> physicians concluded that the claimant could perform the
> mental aspects of work, and two of them actually examined
> and tested the claimant.  Thus, the weight of the
> evidence indicates that Dr. Florell's opinion is not
> entitled to controlling weight, and that further medical
> expert testimony is not required.  The two examining
> consulting reports would be entitled to more weight than
> a non-examining source.

(R. at 21.)

Accordingly, the ALJ concluded that Gardner's limitations did not prevent her from performing her past relevant work and she found Gardner was not disabled and not entitled to benefits for the period between August 14, 1998 through July 19, 2000. (R. at 25-26.)

As relevant, Gardner's medical records reveal the following. Gardner was in a serious motor vehicle accident on June 30, 1997. After the accident and beyond her alleged disability onset date, Gardner underwent various tests, procedures, and surgeries as a result of pain in her neck, back, and arm. (R. at 253-67, 424-456.)

Medical records from before Gardner's alleged disability onset date show that Sami Zabaneh, M.D., of the Christie Clinic Association periodically prescribed Prozac. (R. at 274-299). In December 1997, Paul Pasulka, Ph.D., performed a neuropsychological evaluation because Gardner had concerns about her memory functioning. (R. at 370-74.) During that evaluation, Gardner

reported that she had been diagnosed with fibromyalgia in February 1997, that in June 1997 she was injured in an automobile accident, that she attended physical therapy, and that she continued to work. She also denied any history of depression and indicated that she would like to be able to stop taking Prozac and her pain medication. (R. at 372.) Following seven hours of testing, Dr. Pasulka described Gardner as alert and oriented with good attention, concentration, motivation, and energy level; he concluded that Gardner had generally good neuropsychological functioning with only some mild relative deficits with new learning for visual material and mental flexibility. (R. at 372- 374.) Dr. Pasulka felt that Gardner's symptoms were consistent with mild traumatic brain injury with possible neuropsychological deficits but that Gardner's chronic pain, increased weight, and decreased exercise could also be contributing factors. He recommended that she continue physical therapy, consider a more regular exercise program, and, if deemed necessary, seek evaluation and/or treatment from a speech therapist for enhancement of any potential memory or organizational problems. (R. at 374.)

In June 1999, Plaintiff went to BroMenn Counseling Services and began group therapy on a weekly basis under the supervision of John L. Florell, Ph.D. (R. at 468-87.) At intake, Plaintiff reported that she was in an automobile accident two years prior, that she suffered from chronic pain, that she was fired from her

4

job in 1998, and that her son was in the hospital. Dr. Florell also noted that Gardner reported memory lapses, withdrawal, depression, loss of identity, and sleep disturbance. Gardner was diagnosed with major depression and fibromyalgia. (R. at 468.) Gardner attended therapy approximately every week from June 1999 to April 2000. Progress notes show that, during sessions, Plaintiff discussed her physical health and financial situation. (R. at 468-87.)

In March 2000, Dr. Zabaneh prescribed Xanax and Prozac for Gardner to treat anxiety attacks and depression. (R. at 517-18.) In May 2000, Dr. Florell wrote a letter addressed to Plaintiff's attorney stating, as relevant:

> [B]ecause of her emotional condition, I find that Ms. Gardner is not able to attend a regular 40-hour job. She frequently has trouble maintaining her concentration, her mind wanders, and it is difficult for her to complete complicated tasks. She also has marked difficulty dealing with authority figures such as supervisors and with members of the general public.

(R. at 488).

In March 2001, Valjean M. Cashen, a licensed clinical psychologist, evaluated Gardner at the state agency's request. Cashen observed that Gardner walked with "a voluntary locking of her left leg," that her eye contact was adequate, that she had driven herself to the evaluation, and that she was dressed in clean and casual clothing. Gardner wore a hard neck brace and reported that she was unable to voluntarily support her head for more than

5

three hours.  Gardner also reported that she had a constant ringing in both ears since her car accident and that she misplaced common objects such as her keys.  Gardner reported that she had participated in outpatient therapy "off and on" since 1983 for "marital difficulties, depression, and anxiety."  Gardner reported feelings of depression, helplessness, anxiety, and worry, but she denied having a temper or suicidal thoughts.  Cashen observed that Gardner's thought processes were intact and speech was relevant and coherent.  Dr. Cashen diagnosed Gardner with a chronic adjustment disorder with mixed anxiety and depressed mood.  Cashen concluded that Gardner was having "scant difficulty with understanding, carrying out instructions, being persistent, interacting socially and adapting to the job tasks," and that she would have only slight difficulties remembering and sustaining concentration.  Dr. Cashen concluded that Plaintiff could perform "most entry level occupations with minimal supervision."  (R. at 597-599.)

In March 2001, Leslie Fyans, Ph.D., reviewed the medical record at the request of the state agency.  Dr. Fyans noted Gardner's adjustment disorder with mixed anxiety and depression and considered Gardner's reported activities of daily living, Dr. Cashen's psychological assessment, and progress notes from Dr. Zabaneh which showed mild mental symptoms and fair results with prescription medication treatment.  Dr. Fyans assessed Plaintiff with mild difficulties in restrictions of activities of daily

living and maintaining concentration, persistence, or pace with no restrictions in maintaining social functioning or decompensation. Dr. Fyans concluded that Gardner maintained "the social skills & emotional stability to handle unskilled work on a substantial basis." (R. at 600-17.)

On June 21, 2001, Patricia Beers, Ph.D., reviewed the medical records and agreed with Dr. Fyans' conclusions. (R. at 604.) In On July 30, 2001, Joseph Cools, Ph.D., also reviewed the medical evidence and reports and agreed with Drs. Beers and Fyans' assessments. (R. at 630-33.)

Gardner appealed the ALJ's September 24, 2002 decision to deny her benefits and the Appeals Council denied her request for review. (R. at 10-15.) Thereafter, Gardner filed this civil action for review of the decision denying her benefits for the period between August 14, 1998 through July 19, 2000. Gardner, through appointed counsel, has moved for summary judgment and the Commissioner has moved for summary affirmance.

## **LEGAL STANDARD**

In order to be entitled to DIB benefits, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. See 20 C.F.R. § 404.1505. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. See 20 C.F.R. §

404.1566.

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. See McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. See 20 C.F.R. §§ 404.1520.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. § 404.1521,); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Pt. 404, Subpt. P, App. 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the

plaintiff is not disabled.  See Garfield v. Schweiker, 732 F.2d 605, 607 n.2 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4.  However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment.  See Tom v. Heckler, 779 F.2d 1250, 1253 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence.  See Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).  The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous.  See Imani v. Heckler, 797 F.2d 508, 510 (7th Cir.), cert. denied, 479 U.S. 988 (1986).

## **ANALYSIS**

Gardner argues the ALJ erred by not ordering a psychiatric evaluation and by not obtaining additional testimony from the vocational expert as instructed by the Appeals Council. The Court disagrees. As for the psychiatric evaluation, the Court finds that, considering the medical evidence available to the ALJ at the time of the second hearing, including the reports of Drs. Cashen, Fyans, and Beers, the ALJ reasonably determined that obtaining a psychiatric evaluation was not necessary in this case. See Flener v. Barnhart, 361 F.3d 442, 448 (7th Cir. 2004)("[B]ecause it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected.")

Moreover, there is substantial evidence in the record to support the ALJ's decision not to give Dr. Florell's assessment of Gardner's ability to work controlling weight. The opinion of a treating source is only entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. 20 C.F.R. § 416.927(d)(2). If the opinion does not meet the test for controlling weight, the ALJ must weigh the opinion according to the length and nature of the treating relationship, the supportability of the opinions, the consistency of the opinions, and specialization of the medical

source along with all of the other evidence in the record.  Id. The regulations also state that the ALJ will give good reasons for the weight given the treating source's opinions.  Id.

Here, the ALJ provided numerous reasons as to why she did not give Dr. Florell's opinion controlling weight.  First, she observed that the consultative examinations by the state agency physicians were inconsistent with Dr. Florell's opinion.  See 20 C.F.R. § 404.1527(f)(2)(I) ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.").  She also pointed to the fact that two examining physicians (Dr. Cashen and Dr. Pasulka[1]) performed psychological tests on Gardner and concluded that she could perform the mental aspects of work.  The ALJ also noted that Gardner was initially treated by Dr. Zabaneh, who was not a mental health professional; he did not refer Gardner for psychiatric care; and he merely prescribed a popular anti-depressant.  The ALJ observed that Gardner has never been to a hospital or emergency room complaining of her depression or mental symptoms; and that she stopped working for physical reasons, not because of her mental illness.  Finally, the ALJ properly concluded that Dr. Florell's opinion of disability was not supported by his own treatment notes which show Gardner was

---

[1] The Court recognizes that Dr. Pasulka examined Gardner prior to her alleged disability onset date.

experiencing symptoms of grief resulting from her financial difficulties and physical condition. (R. at 21-22.) See 20 C.F.R. § 416.927(d)(2).

Finally, the Court finds that the ALJ did not err in not soliciting additional testimony from a vocational expert. Although Gardner argues generally that the ALJ should have asked the vocational expert additional questions at the second hearing, she has not specified what specific information the ALJ should have solicited. During the second administrative hearing the ALJ asked the vocational expert to clarify the skill level of Gardner's previous job as a telemarketer. Gardner's attorney then asked the vocational expert some additional questions focusing on the mental aspect of a telemarketer's job. (R. at 810-814.) Since the ALJ did not alter her previous physical residual functional capacity finding and the mental requirements of Gardner's previous job as a telemarketer were clarified during the second hearing, the Court finds the ALJ was not required to further question the vocational expert. This is especially so here where the ALJ found that Gardner's mental status had no impact on her ability to work.

For the above stated reasons, the Court finds that ALJ's findings are supported by substantial evidence and therefore affirms her decision.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary

Judgment [Doc. # 15] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Affirm [Doc. # 19] is GRANTED.

CASE TERMINATED.


Entered this  23rd  day of September, 2005.


                                            s/ Joe B. McDade  
                                            JOE BILLY McDADE  
                                United States District Judge